Berger v. Berger 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-093-CV





BRIAN BERGER,



 APPELLANT


vs.





MICHELLE ANN BERGER,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT



NO. 463,236, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING



 





 Dr. Brian Berger appeals from a final decree of divorce and suit affecting the
parent-child relationship following trial before the court. In six points of error, he complains that
the trial court improperly awarded appellee, Dr. Michelle Berger, a portion of his medical practice
and ordered him to pay excessive child support. We affirm the trial court's judgment.



DIVISIBLE GOODWILL 


 Both parties are medical doctors, ophthalmologists licensed to practice in Texas. 
Dr. Brian Berger specializes in retinal surgery and claims his practice is based entirely on
referrals.

 Appellant's first three points of error complain of the property division. Because
appellant fails to demonstrate error requiring reversal, we will overrule all three points of error. 
 Appellant contends that the trial court abused its discretion by awarding appellee
a portion of the goodwill in his medical practice that is personal to him and therefore not divisible
on divorce. As a matter of law, he argues, there can be no goodwill separate and apart from the
personal skill and reputation of a physician like himself whose practice depends entirely upon
referrals. He cites no authority for this proposition.

 Notwithstanding appellant's complaint, the trial court did not award appellee an
interest in the practice; instead, the court awarded appellant all of his medical practice, both
tangible and intangible assets, and as part of the property division ordered him to pay appellee a
promissory note in an amount equal to one-half the divisible portion of appellant's
practice.  Appellant concedes the existence of $392,500 community interest in his medical
practice. Appellee was awarded a sum of money less than the undisputed amount.

 Under Texas law, that part of goodwill which is based on a professional person's
skill, experience and reputation, as well as upon his continuing in the practice of that profession,
is not subject to division upon divorce as a part of the community estate. See Nail v. Nail, 486
S.W.2d 761 (Tex. 1972). This personal goodwill does not possess value or constitute an asset
separate and apart from the professional's ability, and it is extinguished upon his death. Id. at
764. Some goodwill as well as other intangible assets, however, may be divisible upon divorce. 
One court stated the test as follows: First, goodwill must exist independently of the personal
ability of the professional spouse. Second, if any such goodwill exists, it must have a commercial
value in which the community estate is entitled to share. Finn v. Finn, 658 S.W.2d 735, 741
(Tex. App. 1983, writ ref'd n.r.e.). When the record contains evidence that the professional
business has goodwill that may be divisible, in determining the divisible portion another court has
stated that the trier of fact should exclude the value of the business attributable to the personal
goodwill of the professional spouse; the time, toil and talent the spouse will expend following the
divorce; and/or the spouse's willingness not to compete thereafter. Rathmell v. Morrison, 732
S.W.2d 6, 18 (Tex. App. 1987, no writ). The trial court need not make particular findings as to
the value of each factor considered; upon proper request, it is enough that the trial court's findings
show clearly that the value for nondivisible elements of goodwill was excluded. Id. at 18.

 Appellant's first point of error assumes certain facts: (1) his practice depends
entirely upon referrals; (2) the intangible assets of his practice consist only of goodwill; (3) all of
the goodwill is personal to him; and (4) a portion of his personal goodwill is awarded to appellee. 
However, there are no findings to support these assumed facts. Even if appellant's legal position
is correct, the record presented to us on appeal does not affirmatively show that the trial court
awarded any of appellant's personal goodwill to appellee. Thus, we cannot assume error.

 Appellant further complains that the award to appellee constitutes an abuse of
discretion because the evidence is legally and factually insufficient to support a finding that there
is any goodwill in his medical practice that is subject to division on divorce. (1) However, the trial
court made no such finding.

 The decree of divorce contains about thirty pages dealing with the disposition of
property. According to appellant, the trial court valued the parties' net community estate at
$1,674,000. The evidence showed that appellant's medical practice was valued at $1,055,067,
but the trial court found only $722,448 of that practice to be divisible community property and
only that value is included in the net community estate. Appellant contends that this figure
includes $330,000 he labels personal goodwill. He complains only with regard to this matter.

 We note first that appellant does not challenge any of the trial court's findings of
fact by point of error. Thus, they are binding on appeal. See Hunt County Tax Appr. Dist. v.
Rubbermaid, Inc., 719 S.W.2d 215, 223 (Tex. App. 1986, writ ref'd n.r.e.); Texas State Bd. of
Pharmacy v. Gibson's Discount Ctr., Inc., 541 S.W.2d 884, 886 (Tex. Civ. App. 1976, writ ref'd
n.r.e.). Further, appellant did not request any findings in addition to those made, and we cannot
assume facts contrary to the judgment.

 Moreover, appellant does not complain by point of error that the overall division
of community property is disproportionate or even unequal, although he attempts to assert such
an argument by post-submission letter brief. Instead, he directs his complaint to the
characterization and disposition of only a portion of one asset, personal goodwill in his medical
practice. Even mischaracterization of property, however, will not require reversal unless the
overall property division is manifestly unfair or disproportionate so as to constitute an abuse of
discretion. Murff v. Murff, 615 S.W.2d 696, 699 (Tex. 1981); Cravens v. Cravens, 533 S.W.2d
372 (Tex. Civ. App. 1975, no writ). The trial court found that the property division ordered is
fair, just, and equitable. See Tex. Fam. Code Ann. § 3.63 (Supp. 1992).

 Before trial, the parties stipulated that "Darryl Kelinske is an expert in the valuation
of medical practices." They agreed that he would evaluate their respective medical practices using
a specified formula to determine the fair market value of each, and they agreed to be bound by
his valuation for purposes of property division. The stipulation provided:



The parties agree and stipulate that the fair market value of each of their respective
medical practices as determined by Darryl Kelinske using the attached formula
shall be the value submitted by the parties to the Court for use by the trier of fact
in this case in determining a division of the assets and liabilities of the parties . .
. . The parties agree and stipulate that neither party shall attempt to assert in this
cause a value for either medical practice different from the fair market value for
that medical practice determined by Darryl Kelinske using the formula attached
hereto as Exhibit A.



Appellant agrees that he is bound by the stipulated market value of his practice as assessed by
Kelinske. He simply disagrees with the portion of the value the trial court found to be divisible
on divorce.

 During his testimony at trial, Kelinske explained the three-part formula he used to
evaluate the medical practices. First, he determined a value for the tangible assets such as medical
instruments, furniture, equipment and supplies. To this he added ninety-five percent of accounts
receivable. Finally, to establish the intangible value of the business, he added twelve months'
gross fees collected minus adjusted expenses. This third element, the intangible value, is at issue
on appeal.

 Despite the parties' stipulation, at a pretrial hearing appellant argued that Kelinske's
formula does not provide any means of determining that portion of the intangible assets
attributable to personal goodwill. The trial judge ordered that "at the trial of this cause, [Dr.
Brian Berger] may prove what portion within the valuation of the practices established by Mr.
Kelinske is the indivisible goodwill of the practice as defined by Texas law and what portion of
the value of the practice is divisible as defined by Texas law." Under this order and section 5.02
of the Family Code, appellant had the burden to establish any asset not subject to division and to
rebut, by clear and convincing evidence, the presumption that all property the parties possessed
at the time of divorce is community property. Tex. Fam. Code Ann. § 5.02 (Supp. 1992); Hirsch
v. Hirsch, 770 S.W.2d 924, 927 (Tex. App. 1989, no writ). Appellant does not question that he
had the obligation below to prove his assertions; he disputes that the burden was "clear and
convincing." Regardless, he has the burden to demonstrate reversible error on appeal.

 Employing his formula, Kelinske determined that appellant's practice had a value
of $1,055,067, including $150,848 in tangible assets, $211,600 in accounts receivable, and
$692,619 in intangible assets. Kelinske and other witnesses described various elements
comprising the intangible assets, including both goodwill and going-concern value. The trial court
excluded $332,500 in intangible assets and found that the divisible community property interest
in appellant's medical practice is $722,448. In conclusion of law number six, in effect containing
additional findings, the trial court itemized this total as the sum of $211,600 worth of accounts
receivable, $150,848 worth of tangible assets, and $360,000 worth of divisible intangible assets. 
Because appellant does not challenge any finding by point of error on appeal, we are bound
thereby.

 Appellant first contends that none of the intangibles is divisible, but finally argues
that an additional $330,000 should be excluded as personal goodwill. The court made no finding
of fact concerning what part if any of the intangible assets of appellant's medical practice
represented goodwill, personal or otherwise, and none was requested. In the absence of a fact
finding and in light of those made, we must presume that the trial court excluded from the
valuation appellant's personal goodwill not divisible on divorce and that appellant failed to meet
his burden of proof as to $360,000 worth of intangible assets found to be divisible. See Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989).

 The standard of review for failure to find on an issue on which the appellant had
the burden of proof is the same as that of an adverse finding on such an issue; the appellant
attacking the legal sufficiency of the evidence must demonstrate that the evidence conclusively
established all vital facts in support of the issue. Sterner, 767 S.W.2d at 690. The reviewing
court will first examine the record for evidence that supports the finding, while ignoring all
evidence to the contrary. Id. If there is no evidence to support the finding, the reviewing court
will then examine the entire record to determine if the contrary proposition is established as a
matter of law. Id.; see also Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

 A party challenging the factual sufficiency of the evidence to support a failure to
find on an issue on which he has the burden of proof must demonstrate the failure to find is
against the great weight and preponderance of the evidence. Parrish v. Hunt, 331 S.W.2d 304
(Tex. 1960). In reviewing a factual-sufficiency challenge, this court must examine all the
evidence in the record to determine if there is some evidence to support the finding; if the finding
is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust; or if the great preponderance of the evidence supports its
nonexistence. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951).

 The evidence in this case does not conclusively establish that all intangible assets
are personal goodwill, nor is the failure to so find against the great weight of the evidence. The
evidence is both legally and factually sufficient to support the court's refusal to find an additional
$330,000 in nondivisible personal goodwill.

 During his testimony at trial, Kelinske addressed the value of Dr. Brian Berger's
medical practice under several hypothetical situations. He testified that the intangible value could
range from zero to $400,000, depending upon the circumstances under which the practice might
be terminated or transferred. He testified that if appellant died and the medical practice were
sold, the value of the intangibles would be $400,000, resulting in a total value for the practice of
$762,448. Another expert witness, Thomas J. Macken, also testified that the intangible value of
the medical practice, based on a purchase after death or disability, was around $360,000. Under
this "sale-upon-death" scenario, none of the intangible value would be due solely to appellant's
skill and reputation. Nail, 486 S.W.2d at 764 (professional goodwill is extinguished at the death,
retirement, or disablement of the professional); see also Finch v. Finch, 825 S.W.2d 218 (Tex.
App. 1992, no writ).

 Appellant argues in a post-submission brief that the testimony of Kelinske and
Macken should be excluded because neither witness was able to distinguish what portion of the
intangible assets of appellant's medical practice was attributable to Dr. Brian Berger's personal
skill and reputation. See Hirsch, 770 S.W.2d at 927 (If a witness cannot put a value on the
corporation which does not include goodwill, the witness's testimony should be excluded upon
proper motion.). But because appellant did not move to strike the testimony of either witness at
trial, he waived any error. Tex. R. Civ. Evid. Ann. 103(a)(1) (Pamph. 1992).

 Appellant called several expert witnesses in rebuttal who testified that appellant's
medical practice had little or no going-concern value. Larry Bradford testified that the value of
the going concern was nominal, that he would advise a buyer to pay nothing for going-concern
value, and that the value of intangible assets was no more than $15,000 to $20,000. Dr.
Lawrence Arend testified that a referral-based income stream cannot be sold, that the medical
practice had no going-concern value, and that a retinal surgeon might pay $30,000 to $35,000 for
the convenience of having an office already set up. Mark Rambin testified that the going concern
value was less than $5000.

 The trial court was free to resolve any conflicting evidence regarding the going-concern value of appellant's medical practice. It is the sole province of the court, sitting without
a jury, to judge the credibility and the weight to be given each witness's testimony, to resolve
conflicts in the testimony of one witness with that of another, and to believe part of a witness's
testimony and disregard other portions. Southwestern Bell Tel. Co. v. Griffith, 575 S.W.2d 92,
101 (Tex. Civ. App. 1978, writ ref'd n.r.e.). 

 Appellant directs much argument to the trial court's recitations in its conclusions
of law. We, of course, are not bound by legal conclusions. We may uphold the judgment if it
has any basis in the evidence. Kelinske valued appellant's medical practice at $1,055,067. The
court found it had an intangible value of $360,000. Arend testified the intangible value excluding
personal goodwill would be $30,000. Assuming the remaining $330,000 intangible value was all
personal goodwill, and excluding that amount from the value set by Kelinske, the court could find
that the remaining $725,000 was divisible as community property.

 We conclude that appellant has not demonstrated as a matter of law that his medical
practice has no intangible value other than his personal goodwill. Neither has appellant
demonstrated that the trial court's finding is so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and manifestly unjust.

 We overrule appellant's first three points of error.



INTERRELATION OF PROPERTY DIVISION AND CHILD SUPPORT


 The divorce decree recites, "The Court's award of child support assumes the
division of property made by the Court, and the Court's division of property assumes the award
of child support made by the Court." In his fourth point of error, appellant complains that this
assumption reflects an abuse of the trial court's discretion. We disagree. A trial court abuses its
discretion only when it acts arbitrarily and unreasonably, without reference to any guiding rules
or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241 (Tex. 1985). To
the extent we consider the recitation, the statement demonstrates that the trial court acted in
accordance with the requirements of the Texas Family Code and existing case law.

 The Family Code anticipates an interrelationship between the child support order
and the property division. Section 3.63 directs the trial court to divide the property "having due
regard for . . . any children of the marriage." Tex. Fam. Code Ann. § 3.63(a), (b) (Supp. 1992). 
Conversely, section 14.052 instructs the trial court to consider "any financial resources available
for the support of the child" in setting the amount of child support. Id. § 14.052(b)(3). Also,
section 14.053 permits the court to "consider any additional factors that increase or decrease the
ability of the obligor to make child support payments." Id. § 14.053(e).

 In addition to the Family Code, case law establishes a relationship between the
property division and the child support order. The Texas Supreme Court has held that one of the
factors to be considered in reaching an equitable property division is the relative financial
condition and obligations of the husband and wife. Murff, 615 S.W.2d at 699; see also Zuniga
v. Zuniga, 664 S.W.2d 810, 815 (Tex. App. 1984, no writ); Campbell v. Campbell, 625 S.W.2d
41, 43 (Tex. App. 1981, writ dism'd).

 The financial resources and obligations of the parties are also factors to be
considered in setting the amount of child support. Zuniga, 664 S.W.2d at 814; Klise v. Klise, 678
S.W.2d 545, 547 (Tex. App. 1984, no writ); Ulrich v. Ulrich, 652 S.W.2d 503, 505 (Tex. App.
1983, no writ). Of necessity, consideration of these factors requires an interrelationship between
the property division and the amount of child support because both will affect the financial
resources and obligations of each parent.

 The trial court has wide discretion in dividing the estate of the husband and wife
in a divorce action. Murff, 615 S.W.2d at 696. Under section 3.63 of the Family Code, the trial
court may divide the property as the court deems just and right. Tex. Fam. Code Ann. § 3.63
(Supp. 1992). Likewise, the trial court has wide discretion in establishing the amount of child
support. See Carpenter v. White, 624 S.W.2d 618, 619 (Tex. App. 1981, no writ); Eggemeyer
v. Eggemeyer, 535 S.W.2d 425, 427 (Tex. Civ. App. 1976), aff'd on other grounds, 554 S.W.2d
137 (Tex. 1977). On appeal, we indulge every reasonable presumption that the trial court
properly exercised its discretion. Bell v. Bell, 513 S.W.2d 20, 22 (Tex. 1974); Dorfman v.
Dorfman, 457 S.W.2d 417, 421 (Tex. Civ. App. 1970, no writ).

 We cannot say that the trial court acted without reference to guiding rules and
principles in determining child support. We overrule appellant's fourth point of error.



CHILD SUPPORT


 The Bergers have three children, twin daughters born in 1983 and a third daughter
born in 1987. With the parties' agreement, the trial court appointed appellee managing
conservator of the children and appellant their possessory conservator. The trial court ordered
appellant to pay $9000 per month child support until the two oldest children reach the age of
eighteen or graduate from high school, at which time support is reduced to $6000 per month for
their youngest child. By points of error five and six appellant complains that the trial court abused
its discretion in setting the amount of child support because there is either no evidence or
insufficient evidence to support the award. A judgment ordering child support will not be
disturbed on appeal absent a showing of clear abuse of discretion. The reviewing court will not
revise the amount of child support merely because it considers the sum too high or too low. 
Eggemeyer, 535 S.W.2d at 427. However, the trial court abuses its discretion if it orders more
support than the party can reasonably afford. Broday v. Burleson, 632 S.W.2d 803, 805 (Tex.
App. 1982, no writ); McCartor v. Parr, 612 S.W.2d 268, 269 (Tex. Civ. App. 1981, no writ);
Krempp v. Krempp, 590 S.W.2d 229, 231 (Tex. Civ. App. 1979, no writ)

 We find no abuse of discretion in this case. The legislature promulgated child
support guidelines to aid the courts in setting child support. See Tex. Fam. Code Ann. 
§ 14.052(a) (Supp. 1992). The statute creates a rebuttable presumption that the amount of support
set out in the guidelines is reasonable and in the child's best interest. Id. § 14.055(a). The court
also "may consider" the following factors along with the guidelines in determining the amount of
support:



(1) the needs of the child;


(2) the ability of the parents to contribute to the support of the child;


(3) any financial resources available for the support of the child; and


(4) the amount of possession of and access to a child.



Id. § 14.052(b). Family Code section 14.054 provides for fifteen additional, but not exclusive,
factors that may justify a level of child support at variance from the range recommended in the
guidelines. The Code authorizes the trial court to order an additional amount of support,
depending on the child's needs, when the obligor's net resources exceed $4000 monthly. Id. §
14.055(c).

 Appellant requested findings of fact pursuant to section 14.057 of the Family Code. 
The trial court found:



1. The amount of net resources available to BRIAN BERNARD BERGER per
month is between the $35,346.00 asserted by BRIAN BERNARD BERGER
. . . and the $38,109.00 asserted by MICHELLE ANN BERGER . . . . 


2. The amount of net resources available to MICHELLE ANN BERGER per
month is $2,068.00. . . The Court does not find MICHELLE ANN
BERGER to be intentionally underemployed within the meaning of §
14.054(1) of the Family Code. Under § 14.07 of the Family Code, the best
interest of the children is the Court's primary consideration in determining
questions of support. Given the BRIAN BERNARD BERGER's net
resources are at least $35,346.00 per month, and given the MICHELLE
ANN BERGER has been assigned the task of serving as the primary
caregiver of the couple's three children, the Court finds that it is not in the
best interest of the children to require MICHELLE ANN BERGER to work
as a full-time physician in order to maintain the children's standard of living.


3. The amount of child support payment per month that is computed when
§ 14.055 of the Family Code is applied is $9,000.00 for three children and
$6,000.00 for one child. Under § 14.061 of the Family Code, health
insurance would usually be paid by BRIAN BERNARD BERGER and
uninsured medical would usually be divided. The court, however, had
placed all medical insurance and medical costs on MICHELLE ANN
BERGER to be paid from the child support award.


4 . . . . Given the property division and the child support, BRIAN BERNARD
BERGER is left free and clear with monthly net resources of at least
$21,572.00.


5. By their terms, the percentage guidelines in subdivision (b) of § 14.055 of
the Family Code are not to be used to determine child support in this case
because BRIAN BERNARD BERGER has more than $4,000.00 of monthly
net resources. In their place, the Court must determine the child support
applying division (c) of § 14.055. In doing so, the Court applied 31% to the
first $4,000.00 of monthly net resources to determine child support should
be at least $1,200.00 for three children and then applied 20% to determine
child should [sic] be at least $800.00 for one child. Then, "without further
reference to the percentage recommended by these guidelines," the court
added the sum of $7,800.00 for three children and $5,200.00 for one child
as "additional amounts of child support" based upon the "proven needs of the
children." "Need" is a term of law meaning that when resources are
available the Court may set child support in an amount sufficient to ensure
that the children enjoy the standard of living (1) that they had while their
parents were married; (2) that they would have had had their parents
remained married; and (3) that the parent paying support plans to enjoy for
himself after divorce with his net resources. See Sohoki, II v. Sohoki [sic],
730 S.W.2d 30, 31-32 (Tex. App. 1987, no writ); Klise v. Klise, 678
S.W.2d 545, 547 (Tex. App. 1984, no writ).


The trial court's findings demonstrate that it relied on relevant case law and the factors set out in
the Family Code in setting the amount of child support. Further, these findings are sufficient to
support the amount of child support ordered.

 Appellant argues that the evidence is legally and factually insufficient to support
the court's fact findings. We agree with appellee, however, that this Court, as well as the parties,
is bound by the findings because appellant has not directly attacked them by his points of error. 
See Hunt County Tax Appr. Dist., 719 S.W.2d at 223; Texas State Bd. of Pharmacy, 541 S.W.2d
at 886. Appellant claims, however, that he has directly attacked findings one and two, at least
in argument, citing Pool v. Ford Motor Co., 715 S.W.2d 629, 632-33 (Tex. 1986) (points of error
are to be liberally construed and error is preserved when the complained of error is readily
apparent from the argument briefed). See also Holley, 629 S.W.2d at 696. Even assuming
appellant's brief is sufficient to challenge these fact findings, they are supported by evidence
sufficient to withstand appellate review.

 The child-support issue was hotly contested, both parties offering volumes of
testimony and exhibits from which the court could determine the appropriate amount. Appellant
presented evidence that his net resources are $35,346; appellee presented evidence that they are
$38,109. This evidence sufficiently supports the trial court's finding that appellant's net resources
are somewhere between these two amounts. Appellee's exhibit 68 supports the trial court's
finding that her net resources are $2,068.

 Sufficient evidence also supports the trial court's finding that appellee is not
intentionally underemployed and that it is in the children's best interest for her not to work full
time. Appellee testified that since March 1986 she has been required to work less than full time
in order to care for her children. For her to maintain a full-time practice, she would be required
to work all day and into the evening. She testified that the Austin medical community is overly
saturated with ophthalmologists, and that she does not have enough patients to fill her present
schedule; in order to increase her earnings she would be required to go to other communities to
see patients. She further testified that if the children could be well cared for, she would consider
a full-time practice, but past attempts to employ housekeepers who could drive the children to
their school and various activities have been unsuccessful.

 Appellant offered expert testimony that a new retinal surgeon in the Austin market
could make much more money than appellee makes, that a particular full-time ophthalmologist
was making $210,000 per year, and that appellee could make $150,000 per year working five
days a week.

 Appellee filed with the court a proposed support decision as part of her exhibit 44
setting forth a monthly budget with respect to the children's needs of $15,898.71. Appellant
complains on appeal that this budget includes inflated amounts and expenses personal to appellee. 
He neglects to direct us to portions of the statement of facts where we may find evidence
supporting his contentions, as required by Tex. R. App. P. Ann. 74(d) (Pamph 1992). We note,
however, that the trial court has not awarded the full amount of this proposed budget, and we
presume that the trial court excluded any excessive or personal expenses.

 Appellant also argues that the trial court incorrectly calculated the net resources of
the parties because it failed to take into consideration substantial cash accounts and a promissory
note awarded to appellee as part of the property division. He maintains that this miscalculation
in the net resources of the parties led to an error in calculating the amount of child support
because the Family Code requires child support to be based on the net resources of the obligor
and obligee. See Tex. Fam. Code Ann. § 14.053(a) (Supp. 1992). We are not persuaded by this
argument. The loan and cash accounts awarded to appellee as part of the property division are
not included in "net resources" for the purpose of calculating child support. See Id. § 14.053(b).

 Appellant argues that section 14.053(a) requires that an order of child support
"shall be based on the `net resources' of the obligor and obligee." However, that section
concerns support based on the guidelines. The guidelines are "specifically designed to apply to
situations in which the obligor's monthly net resources are $4000 or less." Id. § 14.055(a). 
When an obligor's net resources exceed $4000 per month, the guidelines apply only to the first
$4000, and "[w]ithout further reference to the percentage recommended by these guidelines, the
court may order additional amounts of child support as proven, depending on the needs of the
child at the time of the order." Id. § 14.055(c). Therefore, any miscalculation in appellee's net
resources would not necessarily lead to the rendition of an improper judgment and thus would not
be grounds for reversal. Tex. R. App. P. Ann. 81(b) (Pamph. 1992).

 In light of the evidence in the record and the factors the trial court was entitled to
consider in reaching its decision, we cannot conclude that the trial court abused its discretion in
ordering the child support, or that the evidence is insufficient to support the amount set. We
overrule appellant's fifth and sixth points of error.

 We affirm the judgment of the trial court.



 

 Marilyn Aboussie, Justice

[Before Justices Aboussie, Jones and Kidd]

Affirmed

Filed: June 17, 1992

[Do Not Publish]

1.   Appellant's second and third points of error are incorrectly worded. He states these
points as "no evidence" and "insufficient evidence" points. However, since appellant bore
the burden of proof on the issue of indivisible goodwill, the proper legal-sufficiency
challenge is "as a matter of law" or "conclusive evidence" and the proper factual-sufficiency challenge is "against the great weight and preponderance of the evidence." See
William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient
Evidence," 69 Tex. L. Rev. 515, 523 n. 28 (1991); W. Wendell Hall, Standards of Appellate
Review in Civil Appeals, 21 St. Mary's L.J. 865, 906-910, 919-920 (1990); Robert W.
Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361,
363-64 (1960). Nevertheless, we will address his points of error as though he used the correct
terminology. See Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982) (appellate courts should
look not to the wording of the point of error, but also at the argument under the point of error
to determine the complaining party's intent).